IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Michael T. Verberg,           )<br>                              )<br>               Movant,         )<br>                              )<br>     vs.                      )<br>                              )<br> United States of America,     )<br>                              )<br>               Respondent.     )<br> _____) | Cr. No. 5:07-45<br><br>**OPINION AND ORDER** |

## I. FACTS AND PROCEDURAL HISTORY

Movant Michael T. Verberg operated a print brokering company that located customers who required printing services, such as print photography, design, and pre-press work. Movant, through his company, contracted with fifty-one companies in the United States and Canada to perform print jobs. Movant would submit the customers' print jobs to printers for bids. Movant would contract with a printer, and then quote a price to the customer at an amount substantially below the printer's bid in order to obtain the customer's business. Movant would receive payment directly from the customer, and either would not pay the printing company for its work, or would pay only a portion of the amount due.

Movant was indicted on January 16, 2007 for mail fraud in violation of 18 U.S.C. §§ 1341 and § 2. Movant initially was represented by a Federal Public Defender. On November 1, 2007, James H. Babb, Esquire of the South Carolina Bar was appointed to represent Movant. Movant pleaded guilty to mail fraud on February 26, 2008. On October 8, 2008, Movant retained Byron E. Gipson, Esquire of the South Carolina Bar. On April 3, 2009, Movant filed a motion to withdraw his plea of guilty. The motion was denied on April 13, 2009. Movant thereafter was sentenced to

incarceration for a term of 108 months, restitution in the amount of $6,273,096.14, and supervised release for a period of three years. Judgment was entered on April 15, 2009.

This matter now is before the court on motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence, which motion was filed April 23, 2010. On May 10, 2010, the United States filed a response in opposition and motion for summary judgment. By order filed May 10, 2010, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Movant was advised of the summary judgment procedures and the possible consequences if he failed to respond adequately. Movant filed a response to the United States' response and motion for summary judgment on August 23, 2010. In addition, Movant filed a motion to dismiss the indictment on February 28, 2011.

## II. DISCUSSION

Movant raises four grounds for relief:

Ground one: Conviction obtained by a Plea of GUILTY, which was unlawfully induced or not made voluntarily or with understanding of the nature of the charge or the consequences of the Plea.

Ground two: Conviction obtained by use of a Coerced Confession.

Ground three: Conviction obtained by a violation of the Privilege against Self-Incrimination.

Ground four: Denial of Effective Assistance of Counsel.

Motion 4-5 (ECF No. 122).

As an initial matter, the court notes that Movant failed to raise Grounds one, two, and three on direct appeal.[1] Movant is legally barred from raising them now, pursuant to the doctrine of

---

[1] Movant agreed to waive his rights to a direct appeal in his Plea Agreement. See United States v. Brown, 349 F. App'x 860 (4th Cir. 2009) (noting that a waiver of appellate rights in a plea agreement is enforceable if the defendant knowingly and intelligently agreed to the waiver).

2

procedural default. See United States v. Sa'ad El-Amin, 373 F. Supp. 2d 574, 577-78 (E.D. Va. 2005) ("The failure to raise a claim at trial and direct appeal generally results in a procedural default barring collateral review, absent a demonstration of cause and prejudice or actual innocence."). To the extent that Movant frames his allegations as resulting from ineffective assistance of counsel, the court will address his grounds for relief hereinbelow.

To prove ineffective assistance of counsel, Movant must show that trial counsel's performance was deficient. See Strickland v. Washington, 466 U.S. 668, 687 (1984). An attorney's performance is deficient when it is not reasonable under prevailing professional norms. Id. at 688. Movant also must demonstrate that he was prejudiced by trial counsel's alleged deficient performance, in that because of trial counsel's unprofessional errors, the result of the proceeding would have been different. See id. at 694. Strickland requires Movant to "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. at 690. The court then must "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. Even if counsel's performance is outside the wide range of professional assistance, an error by counsel will not warrant setting aside the conviction if the error had no effect on the judgment. Id. at 694.

In Hill v. Lockhart, 474 U.S. 52 (1985), the United States Supreme Court discussed the application of the rule regarding deficient performance in cases where the defendant does not go to trial, but instead enters a guilty plea:

> In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure

3

> to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial.

Id. at 57-59 (internal citations omitted).

A.      Involuntary Guilty Plea (Ground one)

Movant contends that his plea of guilty was unlawfully induced and not made voluntarily or with an understanding of the nature of the charge and consequences of the plea. According to Movant, he relied on counsel's advice and "just went along and did what he was advised to do." ECF No. 122-1, 3. Movant notes that he attempted to withdraw his guilty plea on April 3, 2009 because he was not informed of the probable sentencing range and the enhancement that he would likely face.

At the change of plea hearing on February 26, 2008, the court engaged in the following exchange with Movant:

> Q. Mr. Verburg, your attorney has advised the court he has explained the charges against you, the possible penalty, your constitutional rights, including the right to a jury trial; is that correct?
>
> A. Yes, your honor.
>
> Q. You are pleading guilty to Count 1 of the indictment. And in Count 1, the grand jury charges that at all relevant times of this indictment, Michael Verburg was the owner of Brochure Specialist and that he ran the business from his home. And that it was part of the scheme that Michael Verburg would solicit printers to provide contract print jobs to broker and Brochure Specialists. In Count 1, the violation is from on or about March 2005 through on or about July 2005, in the District of South Carolina, Michael F. Verburg, for the purpose of executing, and attempting to

> execute, the scheme and artifice to defraud, knowingly caused to be delivered by commercial interstate carrier, according to direction thereon, printed materials from the companies identified below to the consumers identified below. And Count 1 is March 23, 2005, Invoice 1779, Martin Printing to Creative Mailing Service. The possible penalty that you face in Count 1 for mail fraud is 20 years of imprisonment, a fine of $250,000 –
>
> . . .
>
> Mr. Verburg, if your case were to go to trial, the government would be required to prove the following essential elements beyond a reasonable doubt. The government would have to prove you advanced a scheme to defraud or obtain money or property by means of false or fraudulent pretenses, representations of promises as detailed in the indictment. That in advancing or furthering or carrying out this scheme to defraud or to obtain property by means of false or fraudulent pretenses, the defendant used the mails or caused the mails to be used and the defendant acted with intent to defraud.
>
> Mr. Verburg, do you understand what you have been charged with?
>
> A. Yes, your honor.
>
> Q. Do you understand what the government would have to prove if your case were to go to trial?
>
> A. Yes, your honor.
>
> Q. And do you understand the possible penalty that you face?
>
> A. Yes, your honor.

Change of Plea Hearing 54-55 (ECF No. 105).

Movant, under oath, informed the court that trial counsel explained the charges and possible

penalties. As the Court of Appeals for the Fourth Circuit has explained:

> A defendant's solemn declarations in open court affirming a plea agreement carry a strong presumption of verity because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy. . . . In fact, in the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioners sworn statements made during a properly conducted Rule 11 colloquy are always palpably incredible, and patently

frivolous or false.

United States v. Morgan, 284 F. App'x 79, 87 (4th Cir. 2008) (quoting United States v. Lemaster, 403 F.3d 215, 221 (4th Cir. 2005)) (internal quotations omitted). Moreover, even if trial counsel had been ineffective for failing to explain the charges and possible penalties, Movant was not prejudiced because the court also informed him of the charges contained in the indictment and that he faced a possible term of incarceration of up to twenty years. Movant's claim of ineffective assistance of counsel as to Ground one is without merit.

B.     Coerced Confession (Ground two)

Movant contends that his conviction was obtained by the use of a coerced confession. Movant asserts that trial counsel told Movant that there was no choice but to talk to the Assistant United States Attorney and FBI investigator regarding his role in the offense. Movant states that he was compelled to make incriminating statements because he was "told by governing authorities for his cooperation certain sanctions would be given on his behalf and if not certain consequences [would occur]." Movant contends he was "uncomfortable" with the interview. According to Movant, he was involved in the scheme with a number of co-conspirators, and "that is why he feels he has been coerced into confessing to something that makes him look like a lone participant and that he has been lured by false promises." Entry 122-1, 14.

At the guilty plea hearing, Movant informed the court:

Q. Has anybody promised you what sentence you will receive?

A. No, your honor.

Q. Do you understand you have a right to plead not guilty?

A. Yes, your honor.

6

> Q. And do you understand that when you plead guilty you admit to the truth of the charge that has been made against you?
>
> A. Yes, your honor.
>
> Q. You may have a defense to the charge, I don't know whether you do or not, but do you understand if you plead guilty you waive or give up any defense you may have to the charge?
>
> A. Yes, your honor.
>
> Q. Also you may have given an incriminating statement in this case. In this case when you plead guilty you [waive the right to] challenge whether the statement was made or given voluntarily in accord with your constitutional rights, do you understand that?
>
> A. Yes, your honor.
>
> Q. Other than the plea agreement, has anyone promised you anything or held out any hope of reward to get you to plead guilty?
>
> A. No, your honor.
>
> Q. Has anyone threatened you or used force to get you to plead guilty?
>
> A. No, ma'am.
>
> Q. Has anyone used any pressure or intimidation to cause you to plead guilty?
>
> A. No, your honor.
>
> Q. Do you feel you have had enough time to make up your mind as to whether or not you want to plead guilty?
>
> A. Yes, your honor.
>
> Q. Are you pleading guilty of your own free will and accord because you are guilty?
>
> A. Yes, your honor.

Change of Plea Hearing 60-61 (ECF No. 105).

For the reasons stated above, the court is not persuaded by the account of the facts set forth

in the § 2255 motion. The court is entitled to rely on the statements made by Movant under oath in the guilty plea proceeding. Moreover, Movant states no facts that would support a finding that trial counsel allowed Movant to be unconstitutionally coerced as measured by the totality of the circumstances. If an individual's "'will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process.'" United States v. Abu Ali, 528 F.3d 210, 232 (4th Cir. 2008) (quoting Culombe v. Connecticut, 367 U.S. 568, 602 (1961)). In evaluating whether an individual's will has been overborne, courts consider such factors as "'the youth of the accused, his lack of education, or his low intelligence, the lack of any advice to the accused of his constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment such as the deprivation of food or sleep.'" Id. (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973)). There is no support in the record to support a finding that Movant was coerced, and thus no support in the record to support a finding that trial counsel was ineffective for allowing Movant to provide a coerced confession. Movant's claim of ineffective assistance of counsel as to Count two is without merit.

C.     Self-Incrimination (Count three)

Movant contends that "everything that went on was comandeered by foreign entities that had threatened movants life." ECF No. 122-1, 15. Movant claims that the United States erroneously holds the view that Movant was solely responsible for the crime. Although it is not clear, it appears that Movant argues that trial counsel should have advised him to assert his Fifth Amendment rights, and that, instead, he has been prosecuted for a crime in which a number of foreign co-conspirators allegedly participated. Movant does not dispute his offense conduct, but takes issue with United States' decision to hold him solely accountable "when in fact they knew there was a conspiracy."

ECF No. 122-1, 15.

> At the guilty plea proceeding, the United States summarized the evidence as follows:
>
> Mr. Holliday: Yes, ma'am. Michael Verburg [created] Brochure Specialist, a company he started in 2002, was a print broker between customers and commercial printers. In other words, Brochure Specialists located customers who needed print jobs, identified printers willing to do the work, and acted as a liaison between the two. The operations of Brochure Specialists were conducted primarily in Jacksonville, North Carolina.  You had an operations based out of Jacksonville, whereas Mr. Verburg primarily worked out of Gainesville, besides negotiating print design and press work for various print.  Brochure Specialists did not do actual printing work, but contracted with approximately 50 companies to perform the actual printing, both in the United States and Canada.
>
> You did hear Mr. Verburg mention our count is about 52 print companies that were affected by this.  It is somewhere around there, so obviously -- well, 52 is the number we have. If Mr. Verburg could actually pay a few of those off, that is what he is referring to as far as sentencing issue. Major Printing, Mark Printing and R.L..[Bryan] Company were all South Carolina companies that performed printing jobs for Michael Verburg and Brochure Specialist.  The transactions of those three companies form the 33 counts that are in the indictment.
>
> Mr. Verburg would solicit printers to do brokered work by Brochure Specialist, identify customers who needed print work performed, and submit their jobs for bids to printing companies. The companies would submit their bids and Mr. Verburg would identify which ones would perform the work.  He would then quote a price to the customers substantially below the bid in order to obtain their business.  He never had any intention of paying the printing companies their costs.  Mr. Verburg would bill the customers and receive payment directly from them.  He would then have the printing companies perform the jobs without informing them of the lower price.
>
> Mr. Verburg would receive the invoices from the printing companies and either, one, not pay the printing companies or, two, pay the printing companies a fraction of the amount due in order to entice the printing companies to continue to perform printing jobs. The printing companies thought that as long as he was making payments they would eventually receive their money for all of the jobs they were performing.  He caused printing companies to deliver the finished printing jobs to the customers.  As a result, the customers received the print jobs for amounts substantially below the cost of performing the job. And South Carolina printing companies suffered substantial losses in the amount of $472,957.45.  Your honor, that is the amount that is attributable to the 33 counts.  If you go beyond the state, the amount of loss for the domestic United States victim is approximately 1.6 million dollars, and then also

> there is a Canadian component to this, and the amount of loss we have identified for them is 4.4 million dollars.

Change of Plea Hearing 62-63 (ECF No. 105).

With respect to Count 1, to which Movant pleaded guilty, the United States related the facts as follows:

> Mr. Holliday: Your honor, Count 1 is specifically a print job performed in the vicinity of March 23rd of 2005, Martin Printing, which would be the South Carolina printing companies, one of those I mentioned before, a print company that actually did the job. And then the customer in that case was Creative Mailing Services. So Mr. Verburg would have put -- would have identified Martin Printing, would have solicited business from Creative Mailing Services, had Martin Printing perform the print job, send the goods to Creative Mailing Service, but then receive the money due under that job himself. Martin Printing would have been victimized there because they would not have received the money. The scheme, I know I read through it, basically you attract the word by submitting a very low bid, the bid was actually below what the printers were willing to do the work for so that obviously a customer would be attracted to that low bid. Mr. Verburg would get the work, then he would get the profits, and the printer would be left incurring the entire costs of the job.

Id. at 64.

Movant admitted the truth of the allegations. Id. at 65. Further, Movant informed the United States Probation Officer who prepared his Presentence Investigation Report (PSR) that he admitted to his conduct and wished he had never engaged in the activity. PSR ¶ 22 (ECF No. 96). The court finds not credible Movant's argument that he is not solely accountable for the offenses charged in the indictment. Thus, trial counsel could not be ineffective for failing to advise Movant to assert his Fifth Amendment privilege so that the government would be forced to prosecute any alleged co-conspirators. Cf. Bolender v. Singletary, 16 F. 3d 1547, 1573 (11th Cir. 1994) (holding that the failure to raise a meritless objection cannot serve as a ground for ineffective assistance of counsel). Movant's claim of ineffective assistance of counsel as to Count three is without merit.

D.  <u>Ineffective Assistance of Counsel</u> (Count four)

Movant asserts that trial counsel was ineffective for failing to alert the court to "foreign entities tied to this case that would have made movant an unindicted co-defendant." ECF No. 122-1, 16. Movant contends that "he did what he was told and pled Guilty to an offense that would later show that the Judge was not presented all the facts of his case." <u>Id.</u> Movant contends that trial counsel failed to identify prosecutorial misconduct, call witnesses on his behalf, or obtain immunity for Movant in exchange for his testimony regarding the "real conspirators." <u>Id.</u> at 17. As noted above, Movant affirmed under oath the facts presented to the court during the guilty plea proceeding, stated that he understood the charges, penalties, and his constitutional rights, that he had not been threatened or pressured into pleading guilty, and that he was pleading guilty of his own free will and accord because he was guilty. Trial counsel were not ineffective for failing to assert claims inconsistent with Movant's position at the time of the guilty plea colloquy.

Movant further contends that trial counsel were ineffective for failing to argue that the United States Sentencing Guidelines is not properly enacted law and violates the Separation of Powers Act. The United States Supreme Court has rejected this argument. <u>See</u> <u>Mistretta v. United States</u>, 488 U.S. 361 (1989). Movant's claims of ineffective assistance of counsel as to Count four are without merit.

E.  <u>Motion to Dismiss Indictment</u>

Movant contends that the indictment was defective because it charged him with aiding and abetting mail fraud under 18 U.S.C. § 2. Movant contends that "there are no elements of the defendant aiding and abetting anyone." ECF No. 140. According to Movant, he was sentenced to 108 months incarceration for a crime for which he was not charged. Movant asserts that the court

should dismiss the case with prejudice and have Movant released.[2]

A review of the indictment demonstrates that Movant was charged with both a violation of the mail fraud statute, 18 U.S.C. § 1341, as well as the aiding and abetting statute, 18 U.S.C. § 2. Movant pleaded guilty to violating § 1341 and admitted to the elements of the substantive offense. Thus, Movant did not plead guilty to a crime for which he was not charged. Moreover, aiding and abetting is not an independent crime. United States v. Rashwan, 328 F.3d 160, 165 (4th Cir. 2003). Section 2 "merely obviates the need for awkward phrasing and strained readings of statutes by making clear that in all crimes an accessory will be punished as a principal." Id. Movant's claim is without merit.

### III. CONCLUSION

For the reasons stated, the government's motion for summary judgment (ECF No. 127) is **granted**. Movant's motion to vacate is **denied and dismissed with prejudice**. Movant's motions for disclosure, to expedite, and for transcripts (ECF Nos. 136, 137, 142) also are **denied**.

### IV. CERTIFICATE OF APPEALABILITY

A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A prisoner satisfies this standard by demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Rose v. Lee, 252 F.3d 676, 683-84

---

[2] Movant also asserts in his reply to the United States' motion for summary judgment that the counsel was ineffective for failing to question "who aided or a[]betted whom and in what respect?" Response to the Government Opposition 6 (ECF No. 135). Movant further contends that the indictment fails to charge every element of the offense of aiding and abetting. Movant's claims are without merit, for the reasons stated hereinabove.

(4th Cir.2001). The court concludes that Movant has not made the requisite showing. Accordingly, the court **denies** a certificate of appealability.

**IT IS SO ORDERED**.

/s/ Margaret B. Seymour
United States District Judge

Columbia, South Carolina

May 23, 2011